J-A21034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN CHAFFIER | : | |
| | : | |
| Appellant | : | No. 2095 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 16, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006407-2020

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED SEPTEMBER 30, 2022**

Justin Chaffier (Appellant) appeals the judgment of sentence entered in the Montgomery County Court of Common Pleas following his non-jury convictions of aggravated indecent assault and indecent assault (without consent of other).[1] On appeal, Appellant raises multiple claims of ineffective assistance of counsel. He also challenges the trial court's denial of his request to recall the victim as a witness, avers the waiver of his right to a jury trial was coerced, asserts both sufficiency and weight of the evidence claims, arguing the victim was not credible, and challenges the discretionary aspects of his sentence. After careful review, we affirm.

This appeal stems from a September 4, 2019, incident where Appellant sexually assaulted Melanie Scuderi (Victim) at his apartment. N.T. Bench

_____

[1] 18 Pa.C.S. §§ 3125(a)(1), 3126(a)(1).

Trial, 4/21/21, at 29-30. The trial court summarized the underlying facts as follows:

On September 4, 2020, [Appellant] picked [Victim] up from her home in South Philadelphia, for a planned dinner and overnight stay at [Appellant's] apartment located at . . . West DeKalb Pike, in King of Prussia, Montgomery County, Pennsylvania. The two met about a month prior, on the Facebook Dating app, and had gone out on one date previously. [Victim] knew [Appellant] by his alias, "Justin Giantino[,]" which he later admitted using in lieu of his real name. After dinner in King of Prussia, the couple went to [Appellant's] apartment.

After several hours together and three episodes of consensual sex, [Victim] advised [Appellant], who was "really drunk" and acting increasingly aggressive towards her, that she was not feeling well and wanted to go home. The two had just gotten out of the shower, and as she returned wrapped in her towel to [Appellant's] bedroom, to dress and retrieve her belongings, [Appellant] approached her from behind, and began digitally penetrating her vagina, repeatedly, despite her telling him to stop. Still intent on getting dressed and getting out of the apartment, [Victim] remained calm at first, as she kept telling [Appellant] to stop, and that she was tired. Ignoring her pleas, [Appellant] continued inserting his two fingers into her vagina from behind, which [Victim] testified at trial was not only emotionally and psychologically intimidating and uncomfortable, but also caused her physical pain. [Victim] tried to stop [Appellant] first by grabbing his wrist and then by pushing him away, but he was not deterred. Nearly naked, [Victim] moved from the bedroom into the living room, where she hoped she would feel safer and more able to deescalate the situation. Once in the living room, however, [Appellant] continued to assault her by digital penetration. Growing frustrated and angry, [Victim] yelled and cursed at [Appellant] to stop his painful assault. In all, [Appellant] digitally penetrated [Victim] no less than ten times after she told him to stop.

Finally, after yelling and cursing at [Appellant] to stop, [Victim] elbowed him in the face, causing his nose to bleed. At this point, [Victim] was in shock, instinctively trying to protect herself and get to safety, testifying, "I kind of froze up because I thought that maybe I have to, like, fight him, but he got up and

ran to the bathroom." Moments later, as she quickly dug through her bag for her cell phone, [Appellant] snuck up behind her, wrapping his arm around her neck and shoulders, before dragging her from the apartment and pushing her into the hallway. Panicked, completely naked except for her bra, without her cell phone or bag, [Victim] did not know what to do, and feared that someone might see her as she stood helplessly in the hallway. Ultimately, [Appellant] threw a bathing suit bottom, tee shirt, and pair of her shorts out of his apartment door at her, along with her purse and her overnight bag (but not her phone) before slamming the door. After she was able to cover herself, she ran back and forth in the hallway, calling for help, but when no one responded, she fled to the building's lobby to find help and call 911.

In response to her 911 call, Officer Evan Meoli . . . of the Upper Merion Police Department was dispatched for a reported sexual assault, and responded to the apartment building minutes later at 5:10 am. Once there, he found [Victim] distraught and disheveled, standing at the front door of the apartment's west building. Barefoot, dressed in a tee shirt and shorts, and appearing extremely upset, [Victim] spoke clearly and coherently as she told the officer what had transpired; as reflected by video footage captured by [Officer] Meoli's body cam, . . .

Trial Ct. Op., 12/7/21, at 1-3 (citations to the record and footnotes omitted).

On November 3, 2020, the Commonwealth filed a criminal complaint against Appellant for aggravated indecent assault, aggravated indecent assault forcible compulsion, indecent assault (without consent of other), indecent assault forcible compulsion, theft, and receiving stolen property.[2] After his arraignment, Appellant was released on bail. Subsequently, the Commonwealth filed a motion to revoke Appellant's bail, which was based on an unrelated arrest in New Castle, Delaware. The trial court granted the motion on March 17, 2021.

---

[2] 18 Pa.C.S. §§ 3125(a)(2), 3126(a)(2), 3921(a), 3925(a).

On April 21, 2021, before proceeding to a bench trial, Appellant's counsel explained to the trial court that he spoke with Appellant about the decision to waive his right to a jury. Counsel told Appellant that due to the Covid-19 pandemic, he was unsure when a jury trial would happen, stating he "might not . . . be entitled to one until next year." *See* N.T. Bench Trial at 5. The trial court then informed Appellant that should he elect to proceed by way of a jury trial, the jury would be chosen from members of the community, he would participate in the jury selection process, and the jury must make a unanimous decision to convict him of any crime. *Id.* at 6. Over the course of this discussion with counsel and the trial court, Appellant confirmed three times he was waiving his right to a jury trial and wished to proceed to a bench trial. *Id.* at 5-7.

This case then immediately proceeded to a one-day bench trial. Victim took the stand and provided her recitation of the assault. Trial counsel extensively cross-examined Victim about her allegations. *See* N.T. Bench Trial at 46-93. After Victim finished testifying, the Commonwealth presented the testimony of Officer Meoli and the body worn camera footage from the night of the incident. *Id.* at 100-01.

Appellant also testified at trial, denying Victim's allegations. Appellant alleged that on September 4th, he and Victim were at his apartment when she became upset over calls and text messages Appellant was receiving. N.T. Bench Trial at 137, 146. Appellant said Victim was looking at his phone, broke a glass during a verbal argument, and he asked her to return his phone and

- 4 -

leave. *Id.* at 147-48. When Victim did not return his phone, Appellant stated he attempted to retrieve it from Victim and she "elbow[ed him] in the nose." *Id.* at 148. Appellant went into his bathroom for "ten minutes" then came out and saw Victim still in his apartment. *Id.* at 148-49. He then testified that he "put her in the hallway" and threw her belongings out shortly after, but that Victim was "lunging" at the door every time he opened it. *Id.* at 149-50. Appellant stated when he finished putting Victim's things in the hall, she "slapped" him, said she was "going to ruin" his life, and left. *Id.* at 150.

After Appellant's testimony, trial counsel requested to recall Victim to the stand so that he could impeach her about differences between her testimony at trial and her statements to Officer Meoli on the night of the assault. *Id.* at 169-70. The trial court denied counsel's request, stating that counsel knew the contents of the body worn camera footage, and therefore, he already "had an opportunity to cross-examine [Victim] while she was on the stand." *Id.* at 170-71.

At the conclusion of the testimony, the trial court found Appellant guilty of aggravated indecent assault and indecent assault (without consent of other), and not guilty of the remaining charges. On September 16, 2021, the trial court sentenced Appellant as follows: (1) at count one, aggravated indecent assault, to three and one half to seven years' incarceration followed by a three-year term of probation; and (2) at count three, indecent assault (without consent of other), a concurrent term of nine months to two years'

incarceration. Appellant did not file post-sentence motions, but instead filed a timely direct appeal.[3]

Appellant raises the following claims on appeal:

1. Whether trial counsel was ineffective for failing to call a material witness?

2. Whether trial counsel was ineffective for failing to introduce relevant text messages as evidence in Appellant's defense?

3. Whether trial counsel was ineffective for failing to impeach the testimony of [Victim] when the appropriate opportunity arose?

4. Whether trial counsel was ineffective through a demonstration of questionable decorum throughout the trial and thus, whether such a lack of decorum clouded . . . Appellant's credibility to the [trial c]ourt?

5. Whether the trial court erred in denying trial counsel's request to re-examine [Victim] after the viewing of video evidence?

6. Whether Appellant's constitutional right to a trial by jury was violated when, due to the pandemic delaying the time for jury trials and Appellant's incarceration, he was coerced into a bench trial by the circumstances?

7. Whether the verdict was based upon insufficient evidence as a matter of law and thus, whether a judgment of acquittal should have been awarded?

8. Whether the verdict was against the weight of the evidence?

9. Whether the sentence imposed was proper?

Appellant's Brief at 8-9.

In Appellant's first four issues, he raises claims of trial counsel's ineffectiveness. Generally, claims of ineffective assistance of counsel should

---

[3] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

not be reviewed upon direct appeal, but should be deferred to Post-Conviction Relief Act (PCRA)[4] review. The Pennsylvania Supreme Court allows for two limited exceptions to this general rule: 1) in "an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "in its discretion and for good cause shown," determines post-verdict review is warranted, and the defendant waives his right to PCRA review. ***Commonwealth v. Holmes***, 79 A.3d 562, 577-78 (Pa. 2013).

Appellant acknowledges that his first four claims are premature, but nonetheless argues "trial counsel's ineffectiveness permeated the entire proceedings" and provides "important context" regarding his remaining claims. Appellant's Brief at 14 n.1. As to these claims, Appellant avers trial counsel was ineffective for failing to: (1) call a "material witness to corroborate Appellant's version of events[;]" (2) introduce text messages that would corroborate his version of events; (3) impeach Victim at the "appropriate" time regarding "conflicting statements[;]" and (4) act with proper courtroom decorum, which Appellant claims clouded the trial court's view of his own credibility. Appellant's Brief at 15, 19, 21-22, 24.

---

[4] 42 Pa.C.S. §§ 9541-9546.

The trial court concluded Appellant's claims of ineffective assistance of counsel were not properly before it as they were not raised under the PCRA, and none of the exceptions applied because Appellant's arguments did not have a "fully developed record" to review. Trial Ct. Op. at 6-7. We agree. Appellant contends the issues were properly before the trial court to provide "context." *See* Appellant's Brief at 14 n.1. However, he neither explains how this reasoning falls under the established *Holmes* exceptions for early review, nor does he cite authority to support this contention. We cannot readily discern each element of the ineffective test[5] from the record before us. Further, Appellant has not expressly waived his rights under the PCRA. For these reasons, Appellant's ineffective assistance of counsel claims are not cognizable on direct appeal and must await collateral review. *See Holmes*, 79 A.3d at 563-64.

In his next claim, Appellant avers the trial court erred when it denied trial counsel's request to recall Victim to the witness stand for impeachment purposes. Appellant's Brief at 29. Appellant argues re-examination was necessary to show Victim's testimony at trial — that Appellant assaulted her from behind — was not credible because it contradicted her statement to police

_____

[5] To succeed on claims of ineffectiveness, an appellant must demonstrate his claim has arguable merit, no reasonable basis existed for counsel's conduct, and but for this conduct, the outcome of the proceedings would have been different. *Commonwealth v. Spotz*, 870 A.2d 822, 830 (Pa. 2005) (citations omitted). If the appellant fails to show any of these factors, his entire claim will fail. *Id.*

in the body worn camera footage — that Appellant held Victim down during the assault. *See id.* Appellant states: "This difference was a critical part of demonstrating that [Victim's] testimony was not credible and therefore, none of her version of events should have been believed." *Id.* Appellant concedes that trial counsel "could" have cross-examined Victim on this matter before the body worn camera footage was admitted into evidence, but "that recalling [Victim] was more appropriate as doing so followed [Officer Meoli's] testimony and review of the bodycam footage, rather than discussing [the] same prior to the [o]fficer testifying or the [c]ourt seeing the video." *Id.* at 29-30. Appellant insists "what **could have** been done and what actions are in an individual's best interest, in this case for clarity and weight to the [trial c]ourt, are not always the same." *Id.* at 30 (emphasis in original). Further, Appellant maintains:

> [R]ecalling [Victim] for brief direct examination by trial counsel stood to have been both the most effective way of determining the truth and the most time-efficient. . . because the [trial c]ourt would have seen the body[ worn camera] footage and [Victim's] original testimony by the time the issue of the difference was explored, thereby giving the [trial c]ourt all of the necessary information in a sensible order with which to make a decision as to [Victim's] credibility.

*Id.* at 30-31. He also states recalling Victim would have been an efficient trial tactic since the video was not entered into evidence and therefore, "counsel could have presented the evidence needed by way of a short examination, as opposed to the additional series of questions needed to lay a foundation and bring context." *Id.* at 31. Lastly, Appellant "submits that there would have

been no undue harassment or embarrassment suffered by [Victim] to be recalled for limited examination." *Id.*

By way of background, Victim testified during the Commonwealth's case-in-chief, wherein counsel extensively cross-examined her and then was further provided with the opportunity to re-cross the witness. After the close of the Commonwealth's case-in-chief and Appellant's own direct examination, trial counsel asked to recall Victim. The following discussion between the court and counsel took place:

> The [trial c]ourt: Any additional defense witnesses?
>
> [Trial Counsel]: . . .I want to recall – I have one or two questions for [Victim], Your Honor. I want to recall her.
>
> [Commonwealth]: Your Honor, I'm going to ask for an offer of proof. She was questioned extensively.
>
> The [trial c]ourt: What's the offer of proof? What are you recalling her for?
>
> [Trial Counsel]: The officer testified and in the video, Your Honor, that her statement – she had conflicting statements, very, very important what she said.
>
> Her testimony, . . . on the stand was that [Appellant] was fingering her from behind standing up, and that was it, and I even demonstrated. "Like that, he was doing it? . . . "Yeah like that."
>
>         *     *     *
>
> Then all of a sudden, the video, as you saw, [Victim] said that . . . he was holding her down.
>
> The [trial c]ourt: Had you seen the video before she was on the stand?
>
>         *     *     *
>
> [Trial counsel]: I did, yes.

- 10 -

> The [trial c]ourt: So you're well aware of what she said on the video?
>
> [Trial Counsel]: That is correct.
>
> The [trial c]ourt: And you had an opportunity to cross-examine her while she was on the stand.  I'll deny the request.

N.T. Bench Trial at 169-71.

Pennsylvania Rule of Evidence 611 governs the examination of witnesses and presentation of evidence.  In relevant part, it states:

> **(a)** Control by the Court; Purposes.  The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> > **(1)** make those procedures effective for determining the truth;
> >
> > **(2)** avoid wasting time; and
> >
> > **(3)** protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a)(1)-(3).

We note the "decision whether a party may be recalled is . . . left to the trial court's discretion" and is not reversible absent a showing a "very gross abuse of discretion." *Commonwealth v. Crosby*, 297 A.2d 114, 116-17 (Pa. 1972) (internal quotation marks and citations omitted); *see also Commonwealth v. Tighe*, 184 A.3d 560, 571-72 (Pa. Super. 2018) (citation omitted).  In making this determination, we note:

> [A]n attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with [their] testimony. . . .

*Commonwealth v. Kimbrough*, 872 A.2d 1244, 1261-62 (Pa. Super. 2005) (citation omitted).

- 11 -

The trial court concluded it did not err in denying trial counsel's request because trial counsel was provided with ample opportunity to, and did, cross-examine Victim and argue that any inconsistencies in her statements undermined her credibility. *See* Trial Ct. Op. at 7-8. The court stated: "Having failed to specify any alleged accruing prejudice or harm, or provide the [c]ourt with an offer of proof as to what additional testimony he hoped to elicit from [Victim, Appellant's] claim fails." *Id.* at 7. Moreover, the trial court noted that trial counsel was

> well-advised of the order in which the Commonwealth intended to put forth its evidence, and thus, well-equipped to strategize and prepare the order and nature of his cross-examination to avoid redundancy and/or repetition; as well as, any undue embarrassment on the part of [Victim], in light of the sensitivity of the underlying allegations. More specifically, the [Commonwealth] advised the [trial court] and [trial counsel] on the record before trial commenced of [its] intent to seek admission of the first [seven] minutes of [body worn camera] footage. In response, [trial counsel] argued for admission of the full length of the footage, expressing his own intent to challenge [Victim's] credibility based on alleged inconsistencies in her statement to police. At that time, [trial counsel] also acknowledged that he had the opportunity to question/cross-examine [Victim] at the Preliminary Hearing on that evening's turn of events.
>
> Moreover, the record reflects that [trial counsel] was provided ample opportunity at trial to cross-examine [Victim]. More specifically, the notes of testimony from the trial demonstrate that [trial counsel] spent at least twice the amount of time cross-examining [Victim] as the [Commonwealth], and was further provided with the opportunity to re-cross.

*Id.* at 8.

The trial court also noted that trial counsel "had ample opportunity to argue . . . that [Victim]'s alleged inconsistent statements undermined her

credibility, and did so[.]" Trial Ct. Op. at 9 (footnote omitted). Further, it stated that it

> was well-advised as to [Appellant]'s theory of the case, namely that [Victim]'s credibility was impeached by alleged discrepancies in her testimony as to her precise positioning during [Appellant]'s assault, from those captured on [Officer] Meoli's body [worn camera footage].

*Id.* at 10 (footnote omitted).

After review of the record, we agree and discern no abuse of discretion on the part of the trial court in denying Appellant's request to recall Victim. We reiterate that the trial court may exercise "reasonable control" over the presentation of witnesses to avoid wasting time and undue embarrassment. *See* Pa.R.E. 611(a)(1)-(3). Here, the trial court did just that. Trial counsel crossed and re-cross-examined Victim at length and at two separate instances, counsel specifically asked her about Appellant's position during the assault. *See* N.T. Bench Trial at 49, 79. After an extensive cross examination, trial counsel also had, as the trial court points out, "ample opportunity" to argue Appellant's position that Victim's inconsistent statements render her not credible. Trial Ct. Op. at 9-10. Further, the trial court stated that "[f]rom [trial counsel's] opening statement, to his cross examination . . ., and his closing statement," it understood Appellant's theory of the case and had the "clarity" Appellant alleged he would provide without the additional examination of Victim. *See* Trial Ct. Op. at 10; *see also* Appellant's Brief at 30. "[A]ny further cross-examination of [Victim] would have been extraneous, and/or repetitive." Trial Ct. Op. at 10. Thus, the trial court acted

- 13 -

well within its discretion in denying counsel's request to recall Victim as such questioning would have been repetitive and cause undue embarrassment. *See* Pa.R.E. 611(a)(1)-(3); *see Crosby*, 297 A.2d at 116-17; *Tighe*, 184 A.3d at 571-72. Accordingly, no relief is due on this claim.

In Appellant's sixth claim, he argues his constitutional rights were violated because he did not freely waive his right to a jury trial. Appellant's Brief at 33. He alleges that because the Covid-19 pandemic delayed jury trials "with no clear indication of when they would begin again[,]" he decided to proceed by way of bench trial. *Id.* at 33-34. Appellant concedes his jury trial waiver "could, on the surface, seem knowing, intelligent, and voluntary because a colloquy was conducted[,]" but contends "the nature of the wavier was insufficiently voluntary because Appellant's options tied his hands into a choice that was not truly free." *Id.* at 33. He alleges he would have elected for a jury trial if dates were "more certain or if he were not forced to await trial in prison during a pandemic." *Id.* at 35.

Pennsylvania Rule of Criminal Procedure 620 dictates that for a defendant to waive their right to a jury trial, the court must

> ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. To make a knowing and intelligent waiver, a defendant "must be aware of the 'essential protections inherent in a jury trial as well as the consequences attendant upon a relinquishment of those safeguards.'"

- 14 -

*Commonwealth v. Golinsky*, 626 A.2d 1224, 1227 (Pa. Super. 1993) (citation omitted). Further,

> [t]he[ ] essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008) (citation and internal quotation marks omitted).

The trial court concluded Appellant failed to raise this claim before it, and as such, it is waived. Trial Ct. Op. at 11. *See* Pa.R.A.P. 302(a) (issues not raised before the trial court are waived and cannot be raised for the first time on appeal); *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super 2017) (constitutional challenges not raised before the trial court are waived); *Commonwealth v. Gumpert*, 512 A.2d 699, 703 (Pa. Super. 1986) (the validity of a jury waiver is subject to principles of waiver on appeal). We agree. Appellant did not raise this challenge in a post-sentence motion, but raised it for the first time in his concise statement. Accordingly, the issue is waived.

In any event, had Appellant properly preserved this claim, he would still be entitled to no relief. Appellant completed a written colloquy on April 21, 2021. Appellant's Waiver of Jury Trial, 4/26/21.[6] That same day, the trial

---

[6] Appellant's waiver of jury trial was signed and executed on April 21, 2021; however, it was not entered on the docket until April 26th.

court conducted an oral colloquy of Appellant as to his jury trial waiver. N.T. Bench Trial at 5-7. Appellant stated that he wanted to proceed with a bench trial, that no one threatened him in any way or promised anything in exchange for his waiver of rights, and that he was not under the influence of anything that would impair his ability to understand his actions. *Id.* at 7. Both colloquies complied with the requirements of Pa.R.Crim.P. 620 and our Supreme Court's ruling in **Mallory**. **See** Pa.R.Crim.P. 620; **Mallory**, 941 A.2d at 696-97; Trial Ct. Op. at 12-14 *citing* Appellant's Waiver of Jury Trial, 4/26/21, N.T. Bench Trial at 4-8 (both of which informing Appellant that the jury would be chosen from members of his community, a jury verdict must be unanimous, and he would be permitted to participate in the jury selection process).

In its Rule 1925(a) opinion, the trial court explained that

[w]hile not openly discussed, reasonably subsumed in that consideration was the fact that [Appellant] was incarcerated, without bail, awaiting trial. Acknowledging that discussion as to the Covid driven jury trial delay, [Appellant] clearly and unequivocally waived a jury trial. Thereafter, the Court orally colloqued [Appellant] as to the nature of a jury trial, versus a bench trial, and again, [Appellant] unequivocally waived a jury trial. At no time did [Appellant] voice any reservation, or even display any hesitation to the [c]ourt in waiving a jury trial so as to provide [it] with an opportunity to address any such claim of coercion. To the contrary, [Appellant] unhesitatingly voiced his decision to be knowing, voluntary, and intelligent. As such, the record reflects no indication that [Appellant] suffered any cognitive disparities that might somehow undermine the validity of his waiver. Having repeatedly affirmed his knowing, voluntary, and intelligent waiver, and having not voiced even a concern, [Appellant] cannot now be heard to make his *post hoc* claim. It is waived.

- 16 -

Trial Ct. Op. at 15.

It also merits mention that Appellant cites his "forced" incarceration during the pandemic as a driving factor coercing him to waive a jury trial. Appellant's Brief at 35. In response, the trial court opined:

> [T]he gist of a coercion claim is that there are threats or force by another which subjugate a person to do that which his free will would refuse. No such third party action existed in [Appellant's] jury trial waiver. The worldwide Covid pandemic and its consequent impact on the criminal justice system was not of the [c]ourt or Commonwealth's making, but a prevailing circumstance which [Appellant] considered. Most crucially, the driving factor upon which [Appellant] now claims coercion, his incarceration awaiting trial, was of his own making. As noted, [Appellant] was originally released on unsecured bail at the time of his arrest. His incarceration resulted from his own actions as bail was revoked after he was arrested by law enforcement in Delaware for Stalking and Harassment of his ex-girlfriend and his being identified by Delaware authorities as a person of interest in the suspicious death of his ex-girlfriend; and cannot fairly be attributed to any party other than [Appellant]. He cannot now be heard to complain that he was incarcerated awaiting trial. One can reasonably question whether [Appellant's] zeal for a prompt trial would have been the same were he out on bail awaiting trial. In any event, prompt trial is certainly a consideration for any defendant and [Appellant's] desire for one best served by waiving a jury trial under the circumstances, is not coercion but a calculated decision.

Trial Ct. Op. at 15-16. Accordingly, no relief would be due if Appellant had properly preserved the claim.

Next, Appellant challenges the sufficiency of the evidence for both of his convictions — aggravated indecent assault and indecent assault (without consent of other). The standard by which we review a challenge to the sufficiency is as follows:

- 17 -

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 408-09 (Pa. Super. 2016) (citation omitted).

To be convicted of aggravated indecent assault, a defendant must "engage[ ] in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures" without that person's consent. 18 Pa.C.S. § 3125(a)(1). A person is guilty of indecent assault (without consent of other) when they have "indecent contact with the complainant, [or] cause[ ] the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant" without consent. 18 Pa.C.S. § 3126(a)(1). "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person

- 18 -

for the purpose of arousing or gratifying sexual desire, in any person."  18 Pa.C.S. § 3101.

Appellant asserts the evidence was insufficient to sustain his convictions where Victim's testimony "was not credible and therefore failed to establish, beyond a reasonable doubt, the element of [Victim's] consent as required for both of" Appellant's convictions.  Appellant's Brief at 37.  Regarding aggravated indecent assault, Appellant insists the only evidence presented by the Commonwealth was Victim's testimony, which he maintains was not credible, and as such cannot support his conviction.  *Id.* at 39.  Appellant reiterates his prior claim that Victim's credibility was called into question specifically with respect to the report she made to police and the testimony on the stand regarding how Appellant allegedly approached her[.]" *Id.* at 40. He "submits he acted only with her consent." *Id.*  Further, regarding his conviction for indecent assault (without consent of other), Appellant avers the Commonwealth did not present evidence of "indecent contact" as required by the statute because there was no testimony that "any of the alleged non-consensual actions were for 'sexual gratification[.]'" *Id.* at 38-39.  He states that "[a]t no point, as evidenced by the testimony, did [he] act for his own sexual gratification without [Victim]'s consent." *Id.* at 39.

Preliminarily, we note that to the extent Appellant challenges Victim's credibility, he conflates a sufficiency challenge with a weight of the evidence claim.  "[A] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the

Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." **Commonwealth v. Kinney**, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted). We will address Appellant's challenge to Victim's credibility with his remaining weight claims as analyzed below.

The trial court concluded Appellant waived his sufficiency challenges because he failed to specify the elements of each conviction he was contesting. Trial Ct. Op. 16, *citing* **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008) (to preserve a challenge to the sufficiency, the 1925(b) statement must specify the elements upon which the appellant is basing their claim). We remind counsel that a Rule 1925(b) statement challenging the sufficiency of the evidence must specify the crimes and elements that an appellant is contesting. On this basis alone, we could dismiss the claims. **See Williams**, 959 A.2d at 1257. Nevertheless, as we may discern the nature of his claims as there were only two convictions, we decline to find waiver on the basis of a vague Rule 1925(b) statement.[7] **See Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (in a sufficiency claim, failing to specify which elements of the crime an appellant was challenging on appeal did not require waiver where the appellant challenged one conviction in a "relatively straightforward" drug case and the trial court still addressed the claim in

---

[7] **See Commonwealth v. Doty**, 48 A.3d 451, 456 (Pa. Super 2012) (appellate courts are not bound by the rationale of the trial court and may affirm on any basis)

"substantial detail"). It merits mention that the trial court still addressed the substantive challenge to the sufficiency of each conviction and determined, in the alternative, that these claims were meritless. *Id.*

In concluding Appellant's claims have no merit, the trial court opined the Commonwealth presented sufficient evidence of Victim's lack of consent when it demonstrated Victim made "repeated pleas for [Appellant] to stop," and physically had to defend herself when she "elbow[ed]" him in the nose. *Id.* at 19-20. Further, the trial court determined the Commonwealth presented "ample credible evidence" supporting Appellant's aggravated indecent assault conviction by way of Victim's testimony and the body worn camera footage of her "sober and distraught demeanor" after the attack. *Id.* at 19, *citing* **Commonwealth v. Izurieta**, 171 A.3d 803, 807 (Pa. Super. 2017) (finding victim's testimony that she pushed the defendant away and stated, "I can't do this anymore" before running away was sufficient to establish lack of consent for aggravated indecent assault and indecent assault without consent). We agree as the Commonwealth presented evidence of each element of both convictions through Victim's testimony and the body worn camera footage.

Additionally, the circumstances of the assault belie Appellant's argument that there was no evidence suggesting he took these actions for sexual gratification. Appellant's Brief at 38-39. The trial court found Victim's testimony, wherein she recounted the events leading up to and during the assault, credible. *See Mucci*, 143 A.3d at 409 ("the finder of fact while

passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"). Notably, Appellant "digitally penetrated [Victim] no less than ten times after she told him to stop." Trial Ct. Op. at 2. Furthermore, he kicked her out of the apartment after she made several attempts to resist his unwanted advances. *Id.* at 3. Thus, it was reasonable for the trial court, sitting as the fact-finder, to infer Appellant acted for his own sexual gratification. *See Mucci*, 143 A.3d at 409 (Commonwealth may prove each element of a crime by wholly circumstantial evidence). Accordingly, no relief is due.

Next, Appellant challenges the weight of the evidence for both of his convictions. In reviewing a challenge to the weight of the evidence, we use the following standard:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the fact, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (citation omitted & paragraph break added).

Appellant argues the trial court did not give proper weight to the evidence at trial. Appellant's Brief at 42. Appellant insists Victim's testimony is not credible, which in turn, discredits Officer Meoli's testimony. *Id.* at 37, 39-40, 43-44. He avers his own testimony, that Victim became upset after he received multiple phone calls and text messages during their date, was "the basis for [the] argument" between them and should have been credited by the trial court over Victim's version of events. *Id.* at 43. Appellant maintains the trial court "should not [have] disregarded that [Victim] may have, as Appellant testified, bec[a]me jealous and angry." *Id.*

The trial court concluded Appellant failed to preserve his weight claim because he did not raise it before or at sentencing, or in a post-sentence motion. Trial Ct. Op. at 20. *See* Pa.R.Crim.P. 607(A)(1)-(3) (claims challenging the weight of the evidence shall be raised before the trial court either by an oral or written motion or in a post-sentence motion); *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa. Super. 2011) (citation omitted) (challenge to the weight of the evidence waived where the appellant did not raise it before the trial court before sentencing or in a post-sentence motion). After reviewing the record, we agree there is no indication that Appellant properly preserved the issue with the trial court. Accordingly, it is waived.

In any event, had Appellant properly preserved this claim, he would still be entitled to no relief. In its alternative analysis, the trial court stated the Commonwealth presented "abundant and credible" evidence for each of

- 23 -

Appellant's convictions, "[m]ost significant[, Victim's] detailed account of the assault," which the trial court found was corroborated by other evidence. Trial Ct. Op. at 21-22. Further, the trial court found Appellant's version of events to be "unreliable and self-serving." *Id.* at 22. The trial court, as fact-finder, was free to credit the evidence presented as it chose. *See Williams*, 255 A.3d at 580. We cannot reweigh the evidence where the record supports the verdict simply because Appellant claims his account of the incident is more credible. *See id.* Even if Appellant preserved this claim, he failed to show how the trial court abused its discretion in finding him guilty and, as such, no relief is due.

In his final claim, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 45. We review a challenge to the discretionary aspects of sentencing by an abuse of discretion standard. *See Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa. Super 2010). Further, we note:

> Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170.

Appellant argues the trial court abused its discretion in fashioning his sentence because it "did not consider adequately the pre-sentence investigation, results of the sexually violent predator [(SVP)] assessment (showing Appellant is **not** a[n SVP]), or character statements presented on behalf of Appellant." Appellant's Brief at 46 (emphasis in original). Appellant maintains the trial court "disregard[ed]" these mitigating factors. *Id.* at 47.

We must first determine whether Appellant properly preserved this claim. The trial court noted that Appellant did not specify in his Rule 1925(b) statement whether he was challenging the discretionary aspects or legality of his sentence, but instead only questioned whether his sentence was "proper[.]" Trial Ct. Op. at 22; Appellant's Concise Statement of Errors Complained of On Appeal 11/4/22, at 2. For this reason, the trial court found Appellant waived this claim. Trial Ct. Op. at 22. We agree with the trial court regarding the lack of adequate specificity as to the sentencing claim — the general term, "proper," can be applied to both assertions of legality and discretionary aspects of sentencing. *See Moury*, 992 A.2d at 170.

Further, Appellant failed to file a Rule 2119(f) statement in his appellate brief, as required to invoke this Court's jurisdiction to such a claim. In the Commonwealth's brief, it objected to Appellant's omission of a Rule 2119(f) statement, which prevents this Court from ignoring the default in Appellant's brief. *See Commonwealth v. Stewart*, 867 A.2d 589, 592 (Pa. Super. 2005) (where the Commonwealth does not object to the omission of a Rule

- 25 -

2119(f) statement, this Court may continue with its analysis of a challenge to the discretionary aspects of a sentence) (citation omitted). ***See Moury***, 992 A.2d at 170. Moreover, had Appellant properly preserved this claim, we would rest on the analysis of the trial court:

> [The trial c]ourt imposed a sentence well within the statutory maximum, indeed, as noted within the standard rage. Moreover, the sentences imposed on each count were run concurrently. Finally, the [trial c] expressed significant reasons, including [Appellant's] own acknowledgment that he is in need of psychological treatment which can be effectively provided in a correctional institution, for the sentence imposed which was consistent with the Sentencing Code's general standards.

Trial Ct. Op. at 24 (footnote omitted). As such, no relief would be due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022